20-3136-pr
Murray v. Noeth

# In the
# United States Court of Appeals
## For the Second Circuit

---

August Term, 2021
No. 20-3136-pr

KAREEM M. MURRAY,
*Petitioner-Appellant*,

*v.*

JOSEPH H. NOETH,
*Respondent-Appellee.*

---

On Appeal from the United States District Court
for the Northern District of New York

---

ARGUED: MARCH 11, 2022
DECIDED: APRIL 26, 2022

Before: SACK, PARK, and NARDINI, *Circuit Judges*.

---

Petitioner-Appellant Kareem Murray was convicted of second-degree murder and other offenses in New York state court. During jury selection, Murray's lawyer exercised peremptory strikes against

two male jurors, but the prosecutor raised a "reverse-*Batson*" challenge—that is, a claim that the defendant (rather than the prosecution) was using strikes in a discriminatory manner. *See Batson v. Kentucky*, 476 U.S. 79 (1986); *Georgia v. McCollum*, 505 U.S. 42 (1992). The state court disallowed the two strikes, and Murray was convicted. Murray petitioned unsuccessfully for habeas corpus relief under 28 U.S.C. § 2254 in the United States District Court for the Northern District of New York (James K. Singleton, *Judge.*).  On appeal, Murray renews his challenge to the state court's reverse-*Batson* ruling.  We need not determine whether the state court properly applied *Batson* or erred in disallowing the two peremptory strikes, because those claims are not cognizable under § 2254.  The Supreme Court has held that a state defendant has no freestanding federal constitutional right to peremptory strikes, and so a state court's mistaken disallowance of such a strike does not, standing alone, form a basis for federal habeas relief.  *See Rivera v. Illinois*, 556 U.S. 148, 157–58 (2009).  Likewise, any procedural error by the state court in following the three-step *Batson* framework would not, without more, constitute a violation of a federal constitutional right.  We therefore **AFFIRM** the district court's judgment.

---

ARTHUR R. FROST, Frost & Kavanaugh, P.C., Troy, NY, *for Petitioner-Appellant*.

JODI A. DANZIG, Assistant Attorney General (Barbara D. Underwood, Solicitor General, Nikki Kowalski, Deputy Solicitor General for Criminal Matters, *on the brief*), *for* Letitia James, Attorney General of the State of New York, New York, NY, *for Respondent-Appellee*.

WILLIAM J. NARDINI, *Circuit Judge*:

Federal courts have limited authority to review state criminal convictions. Under 28 U.S.C. § 2254, to get a federal remedy, a petitioner must invoke his federal rights.

Kareem Murray, the petitioner-appellant here, was tried and convicted in New York state court for second-degree murder and other offenses. During jury selection, Murray's lawyer exercised peremptory strikes against certain male jurors, but the prosecutor raised a "reverse-*Batson*" challenge—that is, a claim that the defendant (rather than the prosecution) was using strikes in a discriminatory manner. *See Batson v. Kentucky*, 476 U.S. 79 (1986); *Georgia v. McCollum*, 505 U.S. 42 (1992). The state court disallowed the two strikes, and Murray was convicted. Murray sought, but was denied, habeas relief under § 2254 in the United States District Court for the Northern District of New York (James K. Singleton, *Judge*). On appeal, Murray argues that the state court failed to properly apply the

3

three-step analysis for determining whether a peremptory strike is motivated by purposeful discrimination, which the Supreme Court first outlined in *Batson v. Kentucky*, 476 U.S. at 96–98, and more recently clarified in *Purkett v. Elem*, 514 U.S. 765, 767–68 (1995): (1) the moving party must first make out a prima facie case of discrimination; (2) his adversary must then set forth a facially neutral reason for the peremptory challenge; and (3) finally, the trial court must decide whether the moving party has shown purposeful discrimination.

We need not decide whether the state court properly followed the *Batson* analysis or otherwise erred in disallowing Murray's two proposed strikes, because Murray's petition does not state a cognizable claim under § 2254. The Supreme Court has held that defendants have "no freestanding constitutional right to peremptory challenges," and so "the mistaken denial of a state-provided peremptory challenge does not, without more, violate the Federal Constitution." *Rivera v. Illinois*, 556 U.S. 148, 157–58 (2009). Likewise,

4

any procedural error by the state court in following the three-step *Batson* framework does not, without more, constitute a violation of a federal constitutional right. We therefore **AFFIRM** the district court's denial of Murray's petition.

## I.     BACKGROUND

### A.     State court proceedings

Murray and his uncle, Russell Palmer, shot and killed a man who Murray thought had sexually assaulted his girlfriend. Murray and Palmer were charged in a multiple-count indictment for the murder and related offenses and tried before a jury in Albany County Court. Because Murray and Palmer were tried jointly, section 270.25 of the New York Criminal Procedure Law required their unanimous agreement to exercise their twenty state-provided peremptory strikes. N.Y. Crim. P. Law § 270.25(2)(a) & (3). During *voir dire*, the defense used peremptory strikes against all seven male prospective jurors remaining on Panel 1 at the end of the first round. The defense then

5

exercised a peremptory strike against Juror 5 in Panel 2. The prosecution objected because the defense at that point would have removed its eighth male from the jury. The trial court asked the defense to give a gender-neutral reason for the peremptory strike. The defense noted concern for the juror's "conservative" background and "troubling" body language. App'x at 106–07. The court reserved decision on the prosecution's gender-based reverse-*Batson* challenge until the end of that panel. The defense next struck Juror 19 in Panel 2. In response, the prosecution observed that Juror 19 "is a male." *Id.* at 107. Finding that there was "clearly a pattern" of exercising peremptory strikes against men, the court asked the defense to give a gender-neutral reason for its strike. *Id.* The defense cited the juror's work as a parole officer and prior court-martial experience in the Marine Corps. The defense then struck Juror 17 in Panel 2, and the court noted that this was the defense's tenth peremptory strike of a male juror. The defense said that the juror appeared to "fit the profile

6

of a conservative-prosecution vote." *Id.* The prosecution pointed out that the defense had struck ten out of eleven male prospective jurors. The court allowed the defense's peremptory strike to Juror 19 but rejected its strikes of Jurors 5 and 17, concluding that it saw "no gender-neutral reason" for those jurors and finding that the defense was "excluding males and [had] shown a pattern." *Id.* Jury selection continued until a full jury—three men and nine women—was seated.

At the conclusion of trial, on June 22, 2015, the jury returned guilty verdicts against both Murray and Palmer on one count of murder in the second degree, one count of conspiracy in the second degree, two counts of criminal possession of a weapon in the second degree, and one count of criminal possession of a controlled substance in the second degree. The court sentenced Murray to an indeterminate prison term of 25 years to life for murder, with concurrent lesser prison terms for conspiracy and weapon possession, and a consecutive prison term of 14 years for possessing a controlled

7

substance.

Murray appealed his conviction and sentence. He argued that, among other things, Jurors 5 and 17 were improperly allowed to serve on the jury as a result of erroneous reverse-*Batson* rulings. The Appellate Division affirmed Murray's conviction and sentence on November 2, 2017. *See People v. Murray*, 155 A.D.3d 1106, 1111 (N.Y. App. Div. 2017). The appellate court agreed with Murray's arguments that the defense had provided gender-neutral reasons for the peremptory strikes at *Batson* step two. *Id.* at 1110. Nevertheless, the Appellate Division affirmed because, "even though it appear[ed]" that the trial court had "effectively compressed steps two and three of the *Batson* test," the trial court's "consideration of pretext [could] be inferred from the record." *Id.* Murray filed an application for leave to appeal in the New York Court of Appeals, which denied the motion without comment on April 10, 2018. *See People v. Murray*, 102 N.E.3d 1066, 1066 (N.Y. 2018). Accordingly, Murray has exhausted the state

court remedies available to him. *See* 28 U.S.C. § 2254(b)(1)(A).

**B.    Murray's petition for a writ of habeas corpus**

On February 19, 2019, Murray filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the Northern District of New York. Among other things, Murray argued that the trial court erroneously sustained the prosecution's reverse-*Batson* challenges to Jurors 5 and 17. The district court denied the petition on all grounds. But because "jurists of reason could disagree" on the resolution of Murray's reverse-*Batson* claim, the court issued a certificate of appealability solely with respect to that claim. App'x at 29. The district court reasoned that, to the extent Murray's claim was merely one for the wrongful disallowance of state-created peremptory strikes, it was not cognizable on federal habeas review absent evidence that the individuals seated on the jury were not impartial. But to the extent that Murray's claim was based on the state trial court's improper

9

application of the *Batson* process, the district court noted concern as to whether the state court "impermissibly terminated the *Batson* inquiry at the second step, thus improperly shifting the burden of persuasion to Murray in contravention of *Purkett* [*v. Elem*, 514 U.S. 765, 768 (1995)]." *Id.* at 23. Ultimately, the district court concluded that it was not unreasonable for the Appellate Division to determine that the state trial court in effect considered pretext as required at *Batson* step three. Respondent-Appellee Joseph H. Noeth (the "State") moved to alter the district court's judgment under Fed. R. Civ. P. 59(e), contending that the district court should not have granted Murray a certificate of appealability. The district court denied the State's motion. Murray then filed this appeal.

## II. DISCUSSION

We review *de novo* a district court's decision to deny a defendant's petition for a writ of habeas corpus under 28 U.S.C. § 2254. *Messiah v. Duncan*, 435 F.3d 186, 196 (2d Cir. 2006).

Section 2254(a) provides that a federal court may grant a writ of habeas corpus to a state criminal defendant "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." *See also Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Federal habeas relief is therefore not available for errors of state law. *Id.* at 67 (citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).

Murray does not claim any violation of a federal statute or treaty; he raises only what he characterizes as a federal constitutional claim. He contends that the district court erred in denying his habeas petition because the state trial court conflated the second and third steps of the *Batson* analysis. Specifically, Murray argues that the state court disallowed his two peremptory strikes after improperly finding that his defense lawyer had not offered a gender-neutral reason for

11

those strikes (step two) without separately determining whether the opponent of the strikes (here, the prosecutor) had carried its burden of proving purposeful discrimination (step three). This, he says, contravened the Supreme Court's decision in *Purkett v. Elem*, 514 U.S. 765, 768 (1995), which held that to satisfy *Batson*'s step two, a party's proffered explanation need only be facially neutral; the persuasiveness of the justification comes into play only at the third step.

The problem with Murray's claim is that, as the Supreme Court held in *Rivera v. Illinois*, 556 U.S. 148, 158 (2009), a state court's improper rejection of a defendant's peremptory strike does not, without more, violate the defendant's federal constitutional rights. In *Rivera*, a state judge disallowed a defendant's peremptory strike against a prospective juror on the ground that it was discriminatory. *Id.* at 153–54. The Illinois Supreme Court concluded that the record did not support a *prima facie* showing of discrimination, that the trial

judge had therefore improperly denied the defense's peremptory challenge, but that such an error was not reversible absent a showing of prejudice. *Id.* at 154–55.

The U.S. Supreme Court affirmed, holding that the erroneous denial of a peremptory challenge does not require automatic reversal of a defendant's conviction as a matter of federal law because such an error does not implicate a defendant's federal constitutional rights. *Id.* at 156–57. Because a party's peremptory challenges "are within the States' province to grant or withhold," a defendant's "mistaken denial of a state-provided peremptory challenge does not, without more, violate the Federal Constitution." *Id*. at 158; *see also id.* at 152 ("States may withhold peremptory challenges 'altogether without impairing the constitutional guarantee of an impartial jury and a fair trial.'" (quoting *McCollum*, 505 U.S. at 57)). Indeed, "if a defendant is tried before a qualified jury composed of individuals not challengeable for cause, the loss of a peremptory challenge due to a

state court's good-faith error is not a matter of federal constitutional concern." *Id.* at 157. As the Supreme Court explained, the Due Process Clause is not meant to "safeguard[] . . . the meticulous observance of state procedural prescriptions, but 'the fundamental elements of fairness in a criminal trial.'" *Id.* at 158 (quoting *Spencer v. Texas*, 385 U.S. 554, 563–64 (1967)). To hold otherwise could very well "discourage trial courts and prosecutors from policing a criminal defendant's discriminatory use of peremptory challenges"—a tradeoff the Fourteenth Amendment does not compel. *Id.* at 160.

Murray's claim is squarely foreclosed by *Rivera*. Like the defendant in that case, Murray complains that his state trial court improperly disallowed peremptory strikes that were creatures of state law, not of federal law. But an improper deprivation of such a state right (assuming it occurred) would not have, "without more," *id.* at 158, violated Murray's federal constitutional rights. And Murray does not allege any "more"—he does not claim, for example,

14

that any of the jurors who were seated for his trial were biased (which might state a Sixth Amendment claim), or that any potential jurors were excluded for discriminatory reasons (which might state an Equal Protection claim under the Fourteenth Amendment under *Batson*). His only claim—that state law should have allowed him to peremptorily exclude two unbiased jurors—does not present a federal constitutional issue.[1]

Murray's reliance on the Supreme Court's decision in *Purkett* does not change the analysis. In *Purkett*, the Supreme Court held that the Court of Appeals for the Eighth Circuit erred, on habeas review of a state trial court's *Batson* ruling, "by combining *Batson*'s second and third steps into one, requiring that the justification tendered at

---

[1] Faced with a similar situation in *McKinney v. Artuz*, 326 F.3d 87, 98 (2d Cir. 2003), our Court reserved decision on the question we decide today—namely whether, "because there is no federal constitutional right to peremptory challenges, the denial of a defendant's peremptory challenges could not provide a basis for federal habeas relief." Instead, we resolved that case on the ground that the state courts had not unreasonably applied then-existing Supreme Court precedent. *Id.* In light of the Supreme Court's subsequent decision in *Rivera*, we are able to explicitly answer the question we left open in *McKinney*.

the second step be not just neutral but also at least minimally persuasive . . . ." 514 U.S. at 768. The Court explained that "[i]t is not until the *third* step that the persuasiveness of the justification becomes relevant—the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination." *Id*. Murray argues that in his case, the state trial court committed the same error as the Eighth Circuit in *Purkett*, by evaluating the persuasiveness of his justifications at step two, rather than reserving that determination for step three, when the burden of persuasion lay with the prosecutor.

Murray is correct that, regardless of whether it is a prosecutor or defendant who challenges a peremptory strike, a trial court must follow the same three-step analysis outlined in *Batson* and clarified by *Purkett*. *See McKinney*, 326 F.3d at 98. But the three-step framework is simply a method for protecting constitutional rights; the framework itself is not the right. As *Rivera* explained, a defendant has no federal

constitutional right to a state-law created peremptory strike, and so a

state court's erroneous deprivation of such a right does not on its own

constitute a federal constitutional violation. 556 U.S. at 157–58. This

is true regardless of whether the mistake is characterized as one of

substance (as in *Rivera*, erroneously concluding that a prosecutor has

made out a *prima facie* case of discrimination) or one of procedure (as

here, conflating the second and third *Batson* steps).[2] And the reason

that the courts follow the same three-step framework in reverse-

---

[2] Murray relies on the Seventh Circuit's decision in *Aki-Khuam v. Davis*, 339 F.3d 521, 523 (7th Cir. 2003), which held that habeas relief was warranted where a state trial court had required both parties during jury selection to provide a "neutral reason" along with each peremptory challenge. The state court had disallowed several of the defendant's peremptory strikes, and the jury later convicted the defendant and sentenced him to death. *Id.* at 523–24. We do not find *Aki-Khuam* persuasive here. First, it is not clear that *Aki-Khuam* is consistent with the Supreme Court's later holding in *Rivera* that a state court's denial of state-created peremptory strikes does not, on its own, violate a defendant's federal constitutional rights. 556 U.S. at 158. Second, the *Aki-Khuam* court narrowly limited its holding to the situation before it—where the trial court had effectively abandoned the entire state system of peremptory strikes by consistently skipping over the first *Batson* step of requiring a *prima facie* showing of discrimination. *See Aki-Khuam*, 339 F.3d at 529 n.6. Murray, by contrast, complains of only two instances in which the trial court allegedly erred in its *Batson* analysis. His case therefore tracks *Rivera*, which involved only a "good-faith, if arguably overzealous, effort to enforce the antidiscrimination requirements of [the Supreme Court's] *Batson*-related precedents." *Rivera*, 556 U.S. at 160.

17

*Batson* situations (that is, when a prosecutor challenges a defendant's peremptory strike) is not to protect the defendant's constitutional rights. To the contrary, as the Supreme Court explained in *Georgia v. McCollum*, a reverse-*Batson* challenge is permitted to separately vindicate a juror's right to not be unconstitutionally excluded from jury service as a result of invidious discrimination, and the interests of the community at large. 505 U.S. at 49 ("Regardless of who invokes the discriminatory challenge, there can be no doubt that the harm is the same—in all cases, the juror is subjected to open and public racial discrimination."). Inclusion of the two challenged jurors, then, did not violate Murray's federal constitutional rights.

## III.   CONCLUSION

In sum, we hold as follows:

(1)     A state trial court's mistaken disallowance of a criminal defendant's peremptory strike does not, standing alone, deprive the defendant of a federal constitutional right

18

and accordingly cannot give rise to a remedy under § 2254; and

(2) A procedural error by a state trial court in following the three-step *Batson* framework does not, without more, constitute a violation of a defendant's federal constitutional rights.

For the foregoing reasons, we **AFFIRM** the judgment of the district court denying Murray's petition for a writ of habeas corpus under 28 U.S.C. § 2254.